Good morning, Your Honor. Chen Jeong, representing Ackerman. The Honorable Judge Hedda granted summary judgment motion swastponte without letting us know. Could you speak more loudly and more slowly, please? Swastponte without letting us know that Judge Hedda was considering it. And main reason for granting the summary judgment against us was about his finding that Ackerman failed to prove excess. Because of that, we needed to show striking similarity, but Judge Hedda did not find it either, so that he concluded we are failing to prove our claim. Counsel, could I ask about the striking similarity prong? Your Honor. What is your strong—I think, perhaps unfairly, but summarized, I think that the judge, the trial court judge was concerned that maybe a triangle isn't protectable, that even a series of triangles are still just triangles. Yes, Your Honor. I mean, I saw that from Judge Hedda's decision that, you know, she was admitting that the rebuttal was not successful for the defense of the presumption based on the registration. But still, when he was examining the designs against the infringing pattern, he was still thinking about that originality, whether it is original enough. So I think he was—I would not say Judge Hedda was confused, but I think there was some kind of division of these thoughts about that. But the thing is, even for the simple lines and some typical geographic shapes, the geometric shapes, if they are combined in certain ways or different enough, and then the whole arrangement standing alone can be kind of original enough. There's a precedent case about that. What's your strongest case law support for that, that a geometric pattern, geometric shapes arranged in a certain way is protectable? I don't have that on top of my head, Your Honor, but I believe he was cited to that, cited to in the— On that? In the appendix, yes. On a related point, the Supreme Court has pending a case called Star Athletica versus Varsity Brands. And the issue there is going to be to determine whether a feature of a useful article is protectable. And it's somewhat similar in that it involves athletic uniforms and a forth. Is there any reason in your view why we should wait for the Supreme Court to decide that case before we decide this one? Yes. First of all, it's not a few triangles. If you look at it, it's about a dozen or even more triangles being arranged, plus rectangular. It's like kind of twisted in the diamond shape, having certain tilted angle. It's not just— I'm going to ask you some more questions about that in a minute, but could you focus—because I have the same question Judge Graber has about this. So what I'm trying to say is it's not just a few lines and a few triangles. No, I understand that. But since a related issue, potentially related issue, is at the Supreme Court, in your view, does that case have the potential to change how we might analyze the questions in this case? And therefore, we should wait and hear what they have to say. In my opinion, number one, copyright office granted the registration that presumes originality. That's the law, completely set for a long time. And number two, this arrangement, I think, standing alone, of just about a dozen or even more triangles and the rectangles at the arrangement. And Judge Hader admitted there are millions or multiples or countless ways of arranging these shapes that may look similar, but there's only way they may make it the same as what the subject design presents. And then the infringing pattern is identical, which is why. I mean, if it is somewhat similar, and a few triangles somewhat look kind of arguably similar, then it will hardly become strikingly similar. But if you want to look at our subject design versus infringing patterns on Tillis and West's garments, they are the same. That's like one out of countless ways of chance. So it is identical. It is strikingly similar. And because Judge Hader decided there was no access, he did not go over substantial similarity issues. But we do have it. It was just not examined because Judge Hader found there was no access to be proven. But had Judge Hader let us know about that, we could have explained more about based on the evidences included in the motion. And we could explain, we have more evidences we can present during the trial. Yes, Your Honor. On this point, forgive me for interrupting, but it's tough because this is photocopied and it's black and white. We have a color copier, but you have a footnote in your brief, on blue brief number four. There's a footnote that talks about printed chiffon number one, that this pattern, I think, and here's my question. I think the large, what appears to be a large black triangle area, according to your footnote, it's actually got two triangles in it. One of them is, they're blue, dark blue. Is that why this looks black? That pattern appears on T-list garment. And the first amendment complaint, that's on the excerpts and that is also in our exhibits for MSJ. There are better pictures for the pattern. And I keep finding footnotes telling me there's a better picture, and then I'm looking in vain for the better picture. If I may, Your Honor, I can give you page numbers for your review. It's a different problem. So I'm just comparing ACMET subject design with printed chiffon number one. Yes, that's T-list garment, yes. Okay. And so my question is, maybe so both counsel can see it, the largest triangular field is actually two triangles, as I understand it. And maybe when you come to the podium, you can let me know if I'm wrong, but I'm understanding that to be two dark blue triangles, and it matters because if so, then I think it's more similar to ACMET subject design. But am I understanding your footnote correctly? We were trying to explain the T-list infringing pattern took out two elements out of, like Your Honor said, that two triangles were supposed to make a little shape, but that was taken out. And so little two elements were taken out. Otherwise, it's the same. That's what I'm trying to argue, Your Honor. Okay. All right. That's your argument. And the other side will have a chance to respond, but thank you for that clarification. Yes. And if I may, I'd like to about accents. Number one, Mr. Kim, I mean, Judge Hader found Tony Kim, Mr. Kim being the owner slash president of two companies, the Fashion Life and Design by Nature, does not necessarily mean he knew about, or his employees knew about this infringing pattern and infringement. But there are more facts that support that conclusion. Other than the fact that he owned both companies and the close proximity in time, just a few months away, what are the other facts? So excerpts page 142 and 250 indicates Mr. Kim is the president that was admitted. And also excerpts page 239 that indicate it's a T-list letter in response to our seized and deceased letter. They say, contact our contact person, Mr. Tony Kim at Feng. Feng is a fictitious business name of Fashion Life. So that's T-list. And then the Fashion Life, their order to its vendor in China about the garment to fill the order from the West Hill, that's page 631. And that paper, it was an order form to vendor in China, and then that Mr. Tony Kim's name appears as the user of this system to make this order. So you're relying on circumstantial evidence, yes? Yes, and there are a lot more I can go over. So 633, the Fashion Life order again to Chinese vendor, there are like indication of the records of history of correspondences between Fashion Life and Chinese vendor. And one of them was Tony. If you look at 633, he directly corresponded with Chinese vendor about this order. And also for the, I mean, there was a deadline for shipping, and then one portion was kind of being late. So the order, same page as 633 says, Tony will arrange air shipment for that. And the 631 and 633, if you look at it again, agent for this order from Fashion Life to Chinese vendor was kind of mediated or brokered or connected or bridged by Chinese broker. And the Chinese broker's name was Feng China, and Feng is a fictitious business name of Fashion Life. And also as our statement on this video facts clearly stated, ACMET orders to Design by Nature, that was March through June 2013, that was right after the creation, March 1st of 2013 of the design. If you look at the registration, there's a creation date appears. So only a few weeks or a few days later, after creating this certain design, they give orders to ITX, Design by Nature. And then the orders are multiple times between March through June. And during the same time period, Fashion Life, starting from April, they start filling orders or making orders to Chinese vendors. It's not even one in a million chance, Your Honor. We just made it. How come they saw it besides the fact they saw through our order? And it's just impossible. And then... So on the small swatches, that is we have in the record, we have ACMET subject design, printed chiffon number one, printed chiffon number two, and lace trim. So we have three infringing, allegedly infringing designs, and the subject design is sort of your master, right? We have photos then in the record of garments that have chiffon number two and lace trim. Is there an ACMET subject garment? Is the one, is there an ACMET garment that incorporated this design? And if so, what does it look like? We don't have that in the evidence, Your Honor. We just have our subject design and then we are fabric wholesale. Because of that, we just feel the order for selling fabrics. So all you're doing is producing a bolt rather than producing an actual garment. And then the ACMET's customer will make garments out of that. Right. Okay. Yes. Okay. So that's why there's no model ACMET garment. And if I may, one thing I would like to highlight is, let's say I'm using Apple laptop, this one logo. Let's say this is copyrighted because of this little symbol here. And then let's say I'm making very complicated pattern, but out of this, my own garment, just one logo or one element that looks exactly the same as this. It's out of like 100 elements, but even that one element is good enough for us to state copyright infringement claim. And if I may, I would like to reserve some time. You may. Thank you very much. Good morning, Your Honors. May I please the court? My name is- Speak a little louder too, please. My name is Calvin Myung. I'm the attorney for Appellee's Fashion Lifing, Design by Nature, and Mr. Tony Kim. I'd like to reserve a couple of minutes for the co-counsel's argument. You can move that microphone, I think. I'm getting a backache watching you bend over. The real issue in this case is whether or not the district court was correct in finding that Eggman did not create the more than a bare possibility of the chain of events, linking the Eggman's design to the fashion life, as well as Tony Kim. Counsel, before you launch into that, I'd appreciate your answer to the question that I have asked, which is whether there is any reason for us to await the Supreme Court's decision in Star Athletica before we analyze this case. No, Your Honor, because the striking similarity is the one of the piece where the circumstantial evidence tended to show the axis, and then that's- Because copyright itself is not at issue here. That is correct, Your Honor. Okay, so everybody's agreed that the copyright registration is valid here and establishes that element of the claim? That is correct, Your Honor. Okay. So the issue was whether the plaintiff present the sufficient circumstantial evidence to show that the fashion life, DBA Fang, as well as Tony Kim had an access to the Eggman design. The only- The striking similarity. The striking similarity issue is the district court clearly found that there is a triangle, which is not a protectable design, protectable copyright. Let's suppose that I thought that there was a striking similarity. Doesn't that add to the idea that if your client had access, that there might be an inference that there was copying here? Well, assuming that there is a striking similarity, but that's the one of the piece to determine that access, and then the district court clearly found that there is no other evidence to support that there is an access by the fashion life as well as Tony Kim. The Eggman contract with Design by Nature to print that Eggman's design. The question is, did the plaintiff present the circumstantial evidence to show that the fashion life, in fact, the one who manufactured the garments and sold to the Tillys, had an access with the certain design? There is no evidence whatsoever presented by the plaintiff. So your contention is that the striking similarity is just a coincidence? Because it looks pretty strikingly similar. Well, no, if you look at the, Your Honor, the design by the Eggman as well as if there was the three, the pictures that's shown by the infringing garment, there is no striking similarities. So we're looking at the little, this picture, and I think Judge Bybee is as well? Correct. Those are not strikingly similar? Well, the first infringing garment on the second one, there's no elements are missing. There's two triangles inside the white triangle. I don't see any. That's what I asked earlier. This is sort of part of Judge Bybee's question. My understanding from the footnote is that in this middle image, printed chiffon number one, that the footnote tells us that that's actually, there are two dark blue triangles that we can't really see in this photocopy. That's why that was, for me, that's a significant question when we speak about striking similarity. Do you disagree with that characterization? I do, Your Honor, because even the fact that the bottom part on the Eggman's, the design missing the bottom part on here, on the infringing first garment, and that the top portion on the infringing garment number two does not match with the top portion of the Eggman design. Well, number two, printed chiffon number two, although the colors are different, is essentially identical to the subject design. Isn't it? What's different? The bottom part, I don't see any of the bars from the Eggman's design and infringing garment number two. So even though the border consists of all those little tiny triangles, and we've got these larger triangles with smaller triangles, and you've got, on the angles, you've got four triangles going down the angle on both of them, that isn't strikingly similar because we're missing some bars at the bottom? Well, that's the argument that we made, and then the District Court agreed on that issue. We are reviewing de novo. The District Court passes out of the picture when we're looking at summary judgment. We're independently reviewing that. So what the District Court said is interesting, but it doesn't bind us in any way. The point that I'm trying to make is, Your Honor, even if, assuming that there is a the substantial similarity between the two designs, the question is whether or not the Fashion Life and Tony Kim had an access to the design. And the question is, did the plaintiff produce any circumstantial evidence to link between the Eggman design and Fashion Life? Otherwise, we're left with the conclusion that this was entirely coincidental. That's our argument, Your Honor. It's just the product of two independent minds thinking about triangles. But the plaintiff had an opportunity to present, come up with an evidence, Your Honor. The only evidence they produced was the fact that Mr. Tony Kim is the president as well as owner of the two companies. Of two companies, one of which had access to these designs and another one which produced them. But the one that had an access with that design is the printing company.  So if they could come up with... But there's an individual who had, at least inferentially, access to this design. Your Honor, the printing company has tons of sample swatches every day. So I don't know exactly whether the Tony Kim, in fact, knew about the design based on they were receiving more than 100 or maybe 1,000 designs per year. Well, it doesn't prove it per se, but we're at summary judgment. And the question is whether there is a permissible inference, a reasonable inference of access to add to the striking similarity to create an inference of copying. Well, I believe that that's just a mere speculation. But this went to my original question, which is, if I thought that there was a striking similarity, and if I thought a jury would find there's a striking similarity, doesn't that add... If Kim has some access, that is, it's not out of the realm of possibility. Kim's not entirely independent of this design. He owns a company that had access to this design. And all of a sudden, it shows up in another place that Kim owns. If I thought there was a striking similarity here, doesn't that sort of add to the idea that the circumstances here, even if they were implausible or, let's say, not probable, might nevertheless have occurred? But the question is the plaintiff has shown that evidence that, in fact, Mr. Tony Kim had an access to or knowledge about that design. And they have... Oh, forgive me. Go ahead. They had an opportunity to do that, Your Honor. They haven't taken Mr. Kim's deposition indicating that whether he knew about the design. John said that there was evidence in the record of him having signed... Having been copied on emails and other things that might have... That indicated that he was a part of the overall transaction. I believe that that argument was never mentioned in the motion for summary judgment. In the motion for... What's the matter if it was mentioned? If it's evidence in the record that supports their argument, we have to look at the whole record.  Correct, Your Honor. Okay. Remind me. Did anybody ask for summary judgment here? At either side? Plaintiff did. Okay. They had asked for... Well, the court asked... Centered against them. Correct, correct. So what about these... Is it your argument... Just to make sure that we're clear here, I'm just looking through the excerpts of record and counsel just referenced... You know the record, of course. These invoices and the documentation placing the order in China for the production of this fabric. Is it your contention that these were not in the trial court record? I believe it was, Your Honor. Okay. So what's... Then getting back to my colleague's questions, why doesn't this raise a material issue of fact? Well, the question is whether the fact that the Fashion Life made a purchase order to the Chinese manufacturing company and ordered a certain garment, bearing the partial portion of the garment is bearing the Engman design. But... The question is whether the plaintiff has shown the evidence, the linking that Mr. Tony Kim knew about that Engman design in order... We know the question. We keep asking it. So that... But we're looking to you for an answer. And so here's... Let me just take one more run at it. If we disagree with you about striking similarity, what is your best argument in favor of your client? Why this should not be reversed? My best argument is Fashion Life as well as Tony Kim did not have an access to the Engman design. And there's no question of fact about that raised by the proximity of the order orders and the fact that he owns both companies? No. Well, that's just mere speculation. The fact that he owns... Well, the fact that he owns the companies is not speculation. And the fact of the timing on this is not speculation. But the question is whether there is a link between the design by nature, who received the Engman's design and linking to the Fashion Life as well as Tony Kim. The only question for us now is whether there's a permissible inference that adds to the striking similarity sufficient to create a triable issue of fact. That's the only question here. We don't have to decide for sure that there was access. But why isn't that a permissible inference? I don't think that was a permissible inference. That was just the bare possibility that the plaintiff failed to show. He should have come up with an evidence to reasonable possibility of access by the Tony Kim as well as the Fashion Life. Counsel, I have a question about this. Is there evidence in the record that would help me get an idea of how large these two companies are, how many people work there? We don't have that evidence, Your Honor. Thank you, Your Honor. May it please the Court. Your Honors, my name is Daniel Park and I represent Tillys, Inc. And I think the Court has asked questions of my colleagues. So if the Court has any questions for me, I'm ready to respond to them. I don't believe we do. I think the arguments have been sufficiently covered. So I'll close, Your Honors. Thank you. Thank you, Your Honor. So the Tillys garment missing two elements out of subject design shape, you know, that can be explained by the West Seal design, a West Seal infringing pattern that was made around the same time by the same person. So West Seal design was the same. And then Tillys might have just, okay, I want to take out these two things and then make it the same way otherwise. And then it was made that way. So Tillys garment on its own may arguably not be strikingly similar. But after seeing West Seal design, that was exactly the same. And then that explains the little changes. That's about two missing elements. So that's probably logical inference, not speculation. And also, yes, Your Honor. Counsel, did the trial court have any evidence about how large these companies are? How many people worked there? Yes, Your Honor. At least these transaction records by Fashion Life and iTax, there are names, like contact person. That's different. That's different. I understand the names. How many in total? We don't have that, Your Honor. It's really different if you're asking us to draw the inference, if the company's 5,000 people or three people. And I can't tell that from the record. Am I missing it or is it in the record? We don't have total number of employees, but there are a few names appearing on the transaction papers for both companies. And one more thing about the similarity, size ratio. Big Triangle has two things. In what ratio? That matters, too. It's the same. That I want to kind of highlight, too. And also, if not, it is strikingly similar. That can still be substantially similar as long as we can show access. And like I said, there are other evidences. Had Judge Hader let us know about his concern about our failure or potential failure to prove access, we could have kind of explained where we are coming from about access issue. And that was never given. It was a big surprise when the summary judgment was granted against us because there was no clue, no indication at all before this ruling date. And the access, like I said, there are direct dissemination. We gave that order to sister company owned by the same person. And then right after creation, only a few days, and within the same time period, they started making infringement pattern. And within the same area in L.A. County. And then why dissemination? We gave 8,000 yards of orders. That was also given out to our potential customers within L.A. County. If you look at ECMAS order to Fashion Life, there are like shipping destinations. They are all L.A. So even that 8,000 may be enough to indirectly show the access in addition to these direct evidences of access by Fashion Life and Design by Nature. Thank you, Counsel. You have used your time. Yes, I mean the... You've used up your time. Thank you, Counsel. We appreciate the arguments and comments from all three of you. The case just argued is submitted.
judges: Graber, Bybee, Christen